CALVIN CHESTER LIGHTFORD, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 7372

April 1, 1974                     520 P.2d 955

*Raymond E. Sutton,* of Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, *Charles L. Garner,* Chief Deputy District Attorney, and *Daniel M. Seaton,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

Appellant Calvin Chester Lightford was indicted by the Clark County Grand Jury on two separate charges of unlawful possession of heroin. The cases were consolidated and tried to a jury. Lightford was found guilty on both charges. He has appealed, claiming the trial judge committed reversible error in permitting the heroin to be received in evidence.

1. *The Facts.*

Las Vegas Police Detectives Moody and Baggett observed Lightford driving an automobile on Washington Street in Las Vegas, Nevada. The officers, who had a warrant for Lightford's arrest for the sale of narcotics, followed his vehicle. When Lightford stopped and stepped out of his car, the officers arrested him. Detective Moody, who knew Lightford, escorted him to the front of the police vehicle and requested Lightford to place his hands on the hood of the car, so that he could be searched. Lightford cooperated with the officers. Moody's search revealed five balloons in Lightford's left jacket pocket, and a house key. The balloons contained heroin capsules. Moody advised Lightford that he was under arrest for unlawful possession of narcotics and gave him the Miranda warning.

The officers then proceeded to Lightford's residence, where they conducted a warrantless search of the premises. The search disclosed additional heroin located in Lightford's bedroom dresser drawer. This heroin became the predicate for the

second indictment for unlawful possession of narcotics. The State claims that Lightford consented to the house search. At the pretrial hearing on the motion to suppress, and again at trial, Lightford denied giving any such consent. However, Police Officer Dingle, who arrived after Lightford's arrest, testified that Lightford did in fact hand him the house key and tell him he could search the house. Detective Mathis corroborated Dingle's testimony, stating that Lightford said he didn't care if they searched the house because he was very ill and was going to die anyway. However, prior to giving his "consent" to the house search, it appears that one of the officers in effect threatened to kick in the door if Lightford refused them admission.[1]

2. *The Search of Lightford's Person.*

The recent companion cases of United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467 (1973), and Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488 (1973), are dispositive of the question on the admissibility of the heroin found on Lightford during the search of his person.

The High Court held that in a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment to the United States Constitution, but is also a reasonable search under that Amendment.

In Lightford's case, the officers effected a custody arrest of appellant pursuant to a valid warrant. Once this was done, they had the authority under Robinson and Gustafson to effect a full search of appellant. Therefore, the search of Lightford at the time he was arrested and taken into custody was a reasonable search, and the heroin seized from his person at that time was properly admitted into evidence.

3. *The Search of Lightford's Residence.*

We reach a different conclusion, however, regarding the evidence seized during the search of Lightford's home. The admissibility of the heroin found therein depended entirely

---

[1]Officer Moody testified as follows:

"Q Now, after this conversation took place, what did you personally observe concerning Mr. Lightford? What was done with him at that point?

"A Well, we were sitting around there waiting for the arrival of the tow truck to care for the vehicle, his vehicle, and there were other officers talking to him and during this time, I think one of the officers asked him for the key to his house, reference to getting entrance to the house to search the house, rather· than kick the door in, so to speak."

upon the voluntariness of the consent of appellant to the search, since the arresting officers did not have a search warrant for the premises.

While it is true that a person may validly consent to a search even though the person is in custody, State v. Plas, 80 Nev. 251, 391 P.2d 867 (1964), the voluntariness of that consent must be proved by the State by clear and convincing evidence. Thurlow v. State, 81 Nev. 510, 515, 406 P.2d 918, 921 (1965).

In Thurlow v. State, *supra,* we said:

"The burden of proving consent rests with the state. Clear and persuasive evidence is required, particularly when the suspect is under arrest. [Citations omitted.] In such circumstances a court must distinguish between the peaceful submission by the arrested suspect to the authority of a law enforcement officer, from an intelligent and intentional waiver of a constitutional right. [Citations omitted.]"

As in Thurlow, we do not feel that the State has sustained its burden of demonstrating by clear and persuasive evidence that Lightford's consent was given freely and voluntarily, especially when viewed in the light of Officer Moody's testimony that one of the attending officers had suggested the possibility of kicking the appellant's door in if the door key was refused. Any subsequent "consent" given by Lightford was tainted by the coercive threat of the officer. Channel v. United States, 285 F.2d 217 (9th Cir. 1960). The search of Lightford's residence was improper, and the seized heroin should have been suppressed.

We affirm Lightford's conviction of the unlawful possession of heroin found on his person, and we reverse the remaining charge.

THOMPSON, C. J., and GUNDERSON, BATJER, and ZENOFF, JJ., concur.