ALFONZO SPARKMAN, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 10236

February 7, 1979                                               590 P.2d 151

*Durney and Friedman,* Reno, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Calvin R.
X. Dunlap,* District Attorney, and *John L. Conner,* Deputy
District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

A jury found appellant, Alfonzo Sparkman, guilty of two counts of sale, one count of possession and one count of use of a controlled substance, heroin. NRS 453.321, 453.336, 453.411. For the sales, Sparkman was sentenced to concurrent terms of life imprisonment without the possibility of parole, these terms reflecting the maximum penalties available at the time the crimes were committed. For his use and possession, he was sentenced to two four year terms, each to run concurrently with the other but consecutively to the life terms. He now pursues this appeal.

Appellant was prosecuted by indictment charging drug related offenses occurring on three separate dates. Only two

dates, July 7, 1976, and September 12, 1976, are relevant to this appeal. On July 7, appellant allegedly sold six balloons containing heroin to a police informant. The sale was made in Sparkman's home while the police waited outside. The informant had been fitted with a body transmitter which enabled the officers to monitor the transaction. The informant exited appellant's house with six balloons of heroin and gave a prearranged signal. The police converged on the area and feigned an arrest of the informant. Two uniformed officers, armed with shotguns, entered the home through the open door. Appellant then ran to the back of the house and threw money and some balloons containing heroin out the bedroom window. The wind blew some of the money to the area where the informant was being held and the rest was subsequently found in a gutter two or three houses down the street.

When the two uniformed officers entered the dwelling, one subjected appellant to a pat down search for weapons in the living room while the other checked the remaining rooms to determine whether other persons were present. A third policeman, Officer Meyers, entered the house, placed appellant under arrest and advised him of the charges and his rights. The officers then solicited appellant's consent to search the house. Initially, appellant refused, and Officer Meyers telephoned the district attorney's office. However, before Meyers got through to the district attorney, appellant purportedly changed his mind and agreed to the search.

The circumstances surrounding the consent were the subject of conflicting testimony. Appellant claims his consent was procured through compulsion, the result of the presence of police armed with shotguns. Disputing appellant's claim, the police testified the shotguns were returned to the patrol car once it was determined that Sparkman was alone and unarmed. Appellant ultimately signed a consent to search form. During the search, the officers recovered various items of contraband and evidence, including a quantity of heroin, narcotics paraphernalia and a container of lactose. Colored photographs were taken which were eventually admitted into evidence. It is noteworthy that a number of the pictures depict Sparkman pointing to the items of contraband and other evidence.

Notwithstanding their diligent efforts, police detectives were unable to locate the informant prior to trial. The judge declared the witness unavailable and respondent was permitted to read to the jury portions of his preliminary examination testimony, to which appellant made no objection.

The other sales conviction also involved a controlled purchase by a police informant, transacted in Sparkman's home

on September 12, 1976. An officer conducting an on the scene surveillance at the time of the sale testified that he observed Sparkman come to the door when the informant entered. Although this informant took the stand at trial, he limited his testimony to his past criminal record and the fact that he was currently serving a prison term, refusing to give any further testimony claiming fear for his personal safety. Recognizing the futility of contempt threats, the trial judge declared the witness unavailable and the state was allowed to read the informant's prior recorded testimony into the record. Sparkman again offered no objection.

Seeking reversal, Sparkman contends that (1) his consent to the warrantless search on July 7, 1976 was involuntarily given; (2) the use of the informants' preliminary hearing testimony violated his right to confront the witnesses, and (3) he was improperly sentenced. Although we disagree with appellant's first and second claims, and accordingly affirm the convictions, we find merit in his third contention, and are constrained to reverse the life without possibility of parole sentences. We turn to consider the issues.

1. *The warrantless search.* The evidence appellant seeks to suppress is the product of the warrantless search of his home. Searches conducted without a warrant issued upon probable cause are unreasonable unless shown to fall within a specific exception to the warrant requirement of the Fourth Amendment. Katz v. United States, 389 U.S. 347 (1967). One exception to the warrant requirement is a search conducted incident to a valid consent. Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

To be valid, the consent to search must be voluntarily given, and not the product of deceit or coercion, express or implied. Schneckloth v. Bustamonte, *supra;* United States v. Thompson, 356 F.2d 216 (2d Cir. 1965), cert. denied, 384 U.S. 964; see also Barnato v. State, 88 Nev. 508, 501 P.2d 643 (1972). The burden is on the state to prove the "voluntariness" of the consent by clear and persuasive evidence; the question being essentially one of fact determined from the totality of the surrounding circumstances. Surianello v. State, 92 Nev. 492, 553 P.2d 942 (1976); Lamb v. State, 89 Nev. 570, 516 P.2d 1405 (1973); McIntosh v. State, 86 Nev. 133, 466 P.2d 656 (1970).

Our examination of the circumstances surrounding appellant's consent to the search reveals that the police had probable

cause to believe a felony had been committed. Upon entering the residence, the officers did not assert a right to conduct a warrantless search, indeed, they sought to obtain a warrant. Compare Lamb v. State, *supra*. Appellant is no stranger to the criminal process and knew he had the right to withhold consent. See Sparkman v. State, 88 Nev. 680, 504 P.2d 8 (1972). Furthermore, he was present at all times while the search was being made, the atmosphere was one of cooperation, and appellant himself testified that neither force nor threats of force were exerted by any of the officers against him. Compare Surianello v. State, *supra*. The arrest, accompanied by the Miranda warning,[1] together with the search, although somewhat prolonged, were conducted pursuant to reasonable police practices. The totality of the circumstances overwhelmingly belie appellant's contention that his consent was involuntary.

Moreover, appellant's signature on the consent to search form which states expressly that the signer has a right to withhold consent, is persuasive evidence of the voluntariness of his consent. The mere fact that the consent was given while appellant was in custody does not render it involuntary. McIntosh v. State, *supra;* State v. Plas, 80 Nev. 251, 391 P.2d 867 (1964). Here, no promises or threats were made. Lightford v. State, 90 Nev. 136, 520 P.2d 955 (1974). While the officers may have been armed with shotguns, the trial judge apparently disbelieved appellant's testimony that the guns were leveled at him and that he felt intimidated by the presence of the police with firearms. Two officers testifed that the cumbersome weapons were returned to the patrol car once Sparkman was apprehended. In State v. Patterson, 571 P.2d 745 (Haw. 1977), it was held that the arrival of police officers at the home of a suspect with weapons drawn and pointed at him did not negate the possibility of a voluntary consent to a subsequent search. *Id.* at 750–751. Although the display was a factor to be considered militating against consent, it was not conclusive. Accordingly, the court affirmed the lower court's determination that the entry was legal and that appellant's consent to the subsequent search was not coerced. *Id.* See also United States v. Taibe, 446 F.Supp. 1142 (E.D.N.Y. 1978); cf., Weed v. United States, 340 F.2d 827 (10th Cir. 1965), where consent given under the "dramatic excitement of drawn guns" was held involuntary. Here, there was no "dramatic excitement" or other sufficiently aggravating circumstances that would nullify appellant's consent.

It was permissible for the trial court to conclude that the

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

voluntariness of appellant's consent was proven by clear and persuasive evidence and justified admission of the complained of evidence. Surianello v. State, *supra;* see also Bumper v. North Carolina, 391 U.S. 543 (1968). The United States Supreme Court in Stone v. Powell, 428 U.S. 465 (1976), held that the basic justification for the exclusionary rule is the deterrence of police conduct that violates Fourth Amendment rights. We find no Fourth Amendment violation.

2.  *The use of the preliminary hearing transcript.*

Appellant contends for the first time on appeal that the state's use of the informant buyers' preliminary hearing testimony violated his Sixth Amendment confrontation right. Upon this basis, we are requested to void his convictions. However, in the absence of plain error,[2] we hold that appellant's failure to timely object to the use of the preliminary hearing transcripts prohibits review. Drummond v. State, 86 Nev. 4, 8, fn. 2, 462 P.2d 1012 (1970).

Assuming, *arguendo,* that appellate review was not foreclosed, here there was a specific showing that both informant buyers were unavailable to testify at the trial. NRS 51.055; Barber v. Page, 390 U.S. 719 (1968). Moreover, while we acknowledge that both witnesses were material to the prosecution's case, appellant was represented by counsel at the preliminary hearing where the witnesses were subjected to plenary cross-examination. Under such circumstances, the use of the preliminary hearing transcripts did not violate appellant's right of confrontation. California v. Green, 399 U.S. 149 (1970).

3.  *The propriety of the two life sentences.*

Finally, appellant challenges the imposed two life sentences.

---

[2]NRS 47.040 provides in part:

 1.  Except as otherwise provided in subsection 2, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and,

 (a) In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection.

 . . . .

 2.  This section does not preclude taking notice of *plain errors* affecting substantial rights although they were not brought to the attention of the judge. [Emphasis added.]

NRS 178.602 provides:

 Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

The sentences of life without possibility of parole reflect the enhanced penalty provisions of NRS 453.321(2)(a) as they existed prior to July, 1977. After commission of the sale offenses, but prior to sentencing, the enhanced penalty provisions were amended to provide for life, impliedly with the possibility of parole or a definite term of not less than five nor more than twenty years, together with a discretionary fine not to exceed $10,000. See NRS 453.321(2)(b).

■■■ ■

Sparkman contends the lower court erred in failing to apply the ameliorative penalty provisions in effect at the time he was sentenced. We agree. Although the general rule is that the proper penalty is that in effect at the time of the commission of the offense (Tellis v. State, 84 Nev. 587, 445 P.2d 938 (1968)), NRS 453.341, a statute relating solely to drug convictions, provides:

> Prosecution for any violation of law occurring prior to January 1, 1972, is not affected or abated by the provisions of NRS 453.011 to 453.551, inclusive. If the offense being prosecuted is similar to one set out in NRS 453.321 to 453.551, inclusive, then *the penalties under NRS 453.321 to 453.551, inclusive, apply if they are less than those under prior law.* [Emphasis added.]

■■■ ■

Laws imposing criminal sanctions require strict construction in favor of the citizen and against the government. United States v. Brown, 333 U.S. 18 (1947). Here, NRS 453.341 is explicit, and the statute, relating solely to drug related offenses, controls to the exclusion of the general rule of Tellis v. State, *supra.*

Accordingly, the convictions are affirmed, but the two life sentences without the possibility of parole are reversed with instructions to the trial court to resentence in accordance with applicable law.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., concurring in the result:

Without endorsing the entirety of the above opinion, I agree the evidence does not compel a finding that appellant's consent to search was involuntary. I can agree, also, that in the absence of any objection below, this court may decline to review appellant's complaints concerning use of preliminary hearing transcripts.