JORDAN RICE, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 27247

March 27, 1997                                936 P.2d 319

*Michael Specchio,* Public Defender, and *John Reese Petty,* Chief Appellate Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Chief Appellate District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Jordan Rice was sentenced to five years in the Nevada State Prison and ordered to pay $50,000 for trafficking in a controlled substance. He was also sentenced to a term of two years in the Nevada State Prison for possession of a controlled substance, and to a term of one year in the Washoe County Jail for carrying a concealed weapon. Rice appeals based upon the district court's denial of a motion to suppress evidence. The district court properly concluded that there was no Fourth Amendment violation with respect to the search of Rice's person. However, we hold that Rice's backpack was illegally searched and that the district court judge improperly denied Rice's motion to suppress its contents.

## FACTS

At about 1:30 a.m., on September 29, 1994, Rice was riding his bicycle near the University of Nevada, when University of Nevada Patrol Sergeant Carl Smith stopped him for not having a headlight or a reflector on his bicycle.

Smith testified that Rice immediately "escalated" his voice and became hostile. He stated that Rice was "really hyper" and refused to give his name. Smith also testified that Rice was agitated, highly aggressive and demonstrated jerky movements, and that "[t]he eyes, the sweat popping out on his head, all of those kinds of things indicated to me that he may have a weapon." Smith testified that he felt as though Rice was in a "fight or flight mode." In other words, based on past experience, Smith felt that Rice was either looking for an escape route or a physical altercation. Because Smith thought Rice might escape, he asked him to step off of the bicycle and remove his backpack because it appeared to have a heavy object in it.

Just as Smith started to pat the bag, he saw Rice move his right hand down. Smith then saw "a bulk and distinctive outline in his pocket of a Derringer." Smith claims that he grabbed Rice's hand, pulled his arm around, and pushed him onto the patrol car. Smith handcuffed Rice, called in the incident on his radio and took the loaded gun. Smith told Rice that he was under arrest for operating a bicycle without a headlight and for carrying a concealed weapon. Officer John Cripps soon arrived.

Smith testified that he put Rice in the car, then Cripps "walked over, got the backpack, [and] opened it to check it to make sure there was no further contraband." The officers found money, two bullets, and what they thought to be drugs and drug paraphernalia. Smith stated that he and Cripps were attempting to conduct an inventory on the scene.

While Rice was in custody, the officers performed a presumptive test on the items which they believed to be controlled substances. The tests were positive for methamphetamine, cocaine and marijuana.

## DISCUSSION

Determinations made in a suppression hearing are findings of fact which will not be disturbed on appeal if supported by substantial evidence. Tomarchio v. State, 99 Nev. 572, 575, 665 P.2d 804, 806 (1983). "[R]easonableness necessarily means withstanding objective, and not subjective, scrutiny." United States v. Ortiz, 835 F. Supp. 824, 830 (E.D. Pa. 1993). Thus, this court must determine whether there is substantial evidence to

support a finding that Smith's actions were objectively reasonable under the circumstances.

*Detention*

Rice claims that according to NRS 171.123, after Smith either warned or cited him for not having a head lamp, he should have been released.[1] The State claims that there is substantial evidence upon which to base a finding that Smith acted reasonably in detaining Rice.

At the time of Appellant's arrest, NRS 171.123 (amended 1995), provided:

> 1. Any peace officer may detain any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime.
>
> . . . .
>
> 3. No person may be detained longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60 minutes . . . unless the person is arrested.

"In order to justify a temporary detention for questioning, the officer must . . . have reasonable suspicion of an illegal transaction in . . . any . . . serious crime." United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988), *overruled on other grounds by* United States v. Botero-Ospina, 71 F.3d 783, 786-87 (10th Cir. 1995).

Rice was stopped for a traffic violation. However, testimony indicated that before Smith could express the nature of the stop, Rice began to shout. Smith testified that he noticed Rice had been drinking. Further, Rice remained on his bicycle. From past experience, Smith testified that he thought Rice might try to escape. In addition, Smith claims that Rice refused to identify himself, elevated his voice, and fidgeted with the thumb straps on his backpack which contained a noticeably heavy object.

Based on the foregoing, we hold that Smith could not simply cite Rice and release him because there was evidence that Rice would neither quiet down nor identify himself. Furthermore, there was substantial evidence upon which the trial court could

---

[1]Rice argues that if the detention was illegal, then it is unlikely that Smith would have noticed the weapon or searched the backpack. Thus, Rice claims that all of the evidence should be suppressed.

determine that Smith was reasonable in his belief that Rice might be dangerous and attempt to use his backpack or whatever else he could find as a weapon. Thus, it seems that Rice could be detained for questioning under both NRS 171.123 and *Guzman* because the evidence supports the conclusion that Smith had a "reasonable suspicion" that Rice might attempt an assault.

However, the officer may only briefly detain the suspect no longer than necessary to verify the officer's reasonable suspicion. *Terry* v. Ohio, 392 U.S. 1, 19-20 (1968). In this case, Smith testified that the entire incident took less than five minutes. Thus, the evidence supports a finding that the detention was no longer than necessary.

### *Search of Rice's person*

A lawful frisk does not always flow from a justified stop and detention for questioning. United States v. Thomas, 863 F.2d 622, 628 (9th Cir. 1988). If, during the detention, probable cause fully matures, the detention can ripen into an arrest—thus, a full search incident to arrest is permissible. *Terry,* 392 U.S. at 10. In addition, a police officer may conduct

> a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27.

Because the evidence supports a finding that Smith was reasonable in the belief that his safety was in danger, a limited search for weapons was in order.

In this case, Smith testified that his intent was to pat search the backpack and then Rice. However, he testified that before he could do so, he saw the outline of a gun in Rice's pocket. At that point, probable cause fully matured and Smith was authorized to conduct a limited search for weapons. *See* United States v. Hill, 545 F.2d 1191, 1193 (9th Cir. 1976) (a bulge in a suspect's clothing that was consistent with the presence of a weapon was a relevant factor in determining the validity of a frisk).

*Search of Rice's backpack*[2]

"The authority to search incident to arrest derives from the need to disarm and prevent any evidence from being concealed or destroyed." State v. Greenwald, 109 Nev. 808, 810, 858 P.2d 36, 37 (1993).

In *Greenwald,* this court held that the search of Greenwald's motorcycle after Greenwald was safely locked away in a police car was not a valid search incident to arrest because there was no conceivable need to disarm him or prevent him from concealing or destroying evidence. *Id.* The same is true in this case. Smith testified that Rice was placed in the patrol car before Cripps searched the backpack. Thus, under *Greenwald,* the backpack was not validly searched incident to arrest.

Next, in *Greenwald,* the State unsuccessfully argued that the motorcycle search was justified as a valid inventory search.

> [A]n inventory search must not be a ruse for general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime."

United States v. Wells, 495 U.S. 1, 4 (1987) (quoting Colorado v. Bertine, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring)). This court applied *Wells* in *Greenwald* and held that

> the officer did not even pretend to prepare a complete inventory of all of the items that were the product of his extensive search of the motorcycle. . . . It is rather obvious that the officer was not doing what he was doing just for the sake of taking inventory of Greenwald's valuables. If he had not been searching for contraband, the officer would in all probability simply have inventoried "one zippered toiletry bag" and let it go at that. . . . [Thus], the officer was making an unwarranted search under the guise and ruse of an inventory search. . . . Without an inventory, we can have no inventory search.

*Greenwald,* 109 Nev. at 810-11, 858 P.2d at 38.

The situation here is even more egregious than that resolved in *Greenwald* because Smith admitted he and Cripps were looking

---

[2]This issue was not addressed by the parties. Both parties agree that the pivotal issue was the reasonableness of Rice's detention.

for contraband when they searched Rice's backpack. There is also no indication in this record that a formal inventory was prepared at the time of arrest. Therefore, we hold that Rice's backpack was not searched subject to a valid inventory search and that its contents should have been suppressed at trial.

Accordingly, we affirm Rice's conviction for carrying a concealed weapon, and reverse his conviction for trafficking in a controlled substance and for possession of a controlled substance. Therefore, we remand this case to the district court to modify Rice's sentence in accordance with the opinion expressed herein.

MAUPIN, J., concurring in part and dissenting in part:

The parties to this appeal did not choose to litigate the issue of whether this search of the backpack was invalid as an improper inventory search or was an invalid search incident to arrest. The contentions of the parties were restricted to the reasonableness of the detention and the searches incident thereto. I would therefore not reach this issue on direct appeal.